In re Jerome Lee SOUTHWORTH a/k/a Jerry Southworth, Debtor.

SOUTHWEST NATIONAL BANK, Plaintiff,

v.

Jerome Lee SOUTHWORTH, Carol A. Southworth and Mark A. Dickerson, Trustee, Defendants.

Bankruptcy No. 81–11510.
Adv. No. 82–0140.

United States Bankruptcy Court, D. Kansas.

Aug. 10, 1982.

Robert Minter of Minter & Willis, Wichita, Kan., for Southwest Nat. Bank.

Mark A. Dickerson, trustee pro se.

Eric D. Bruce of Bruce, Davis & Gilhousen, Wichita, Kan., for Albacore, Inc., a potential purchaser from the trustee.

David A. Gripp of Crockett & Gripp, Wichita, Kan., for debtor.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, Southwest National Bank seeks a modification of the automatic stay, bringing to issue a conflict of priorities with the trustee under 11 U.S.C. § 544.

The issues presented for determination are:

1. Is an assignment of a right to receive payment under a contract for deed of realty governed by Article 9 of the Uniform Commercial Code.

2. Can the trustee use his strong arm powers under 11 U.S.C. § 544 to establish priority in the right to receive payments under a contract for deed of realty.

3. How does a creditor perfect an interest represented by an assignment of a buyers' rights in land being purchased under a contract for deed.

4. Can the trustee use his strong arm powers under 11 U.S.C. § 544 to establish priority in the land being bought under a contract for deed.

The parties have submitted briefs and have stipulated to facts, and the matter is ready to be resolved.

## FINDINGS OF FACT

On January 18, 1973 Scott and Effie Stuckey, the legal owners of real property known as 1450–1452 Park Place, Wichita, Kansas, sold their realty in a contract for deed and escrow agreement to the debtor, Jerome Lee Southworth, and his wife, Carol. Carol Southworth is not a debtor in the bankruptcy proceeding.

On May 25, 1973 James and Marjorie Chenhall, the legal owners of real property known as 1344 North Waco, Wichita, Kansas, sold their realty in a contract for deed and escrow agreement to the debtor and his wife.

In 1976 the debtor and his wife sold their interest in the two properties to Kenneth Holmes on a contract for deed, subject to the escrow of the Stuckeys and the Chenhalls.

On January 12, 1976 Southwest National Bank, Wichita, Kansas (Bank) took an assignment from the Southworths of the Southworth's right to receive payments from Holmes under the contract for deed. This assignment was made "for the purpose of security payment" of a loan made by Bank to the Southworths.

The assignment also contained a clause stating the Southworths assigned,

all rights, interest and title to said real property ... and ... upon default, Southwest National Bank may deem itself insecure and may then foreclose its security interest in and to Contract for Deed and Escrow Agreement and proceed to sell said contract for Deed and Escrow Agreement as provided by the appropriate sale's provisions of the Uniform Commercial Code ....

The Bank neither filed a financing statement under the provisions of the Kansas Uniform Commercial Code nor recorded its assignment with the local register of deeds.

Jerome Southworth subsequently filed a chapter 7 petition in bankruptcy.

## CONCLUSIONS OF LAW

As a preliminary matter, only Jerome Lee Southworth is a debtor in these proceedings. His wife, Carol A. Southworth, has not filed a bankruptcy petition. Therefore, only the debtor's ½ interest in the land and ½ interest in the right to receive payments from Holmes are in issue. The trustee's use of § 363(g) or (h) is not before the Court at this time.

Bank has been assigned the debtor's and his wife's (Vendors) right to receive payments from Kenneth Holmes (Vendee) under a contract for deed to purchase two parcels of land.

Although K.S.A. § 84–9–104(j) indicates the Uniform Commercial Code does not apply *to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder* ; ...., nevertheless Article 9 does apply to a security interest in so-called "realty paper." If a borrower mortgages real property for a loan, K.S.A.

§ 84–9–104(j) excludes the transaction from the provisions of Article 9. If, however, the vendor/mortgagee holds a promissory note, a right to receive payment in conjunction with a real estate mortgage, and assigns the right to receive payment as security for a loan Article 9 governs. For example:

B mortgages his real estate to L. L pledges B's mortgage to Bank as security for a loan. Article 9 does not apply to the transaction between B and L, but does apply to the transaction between L and Bank.

J. White & R. Summers, Uniform Commercial Code, § 22–6, at 890 (2nd Ed. 1980).

■ This is in accord with the case law. Under the doctrine of equitable conversion, the vendor's right to receive payment in a land sale contract is a personal property right. *In Re Estate of Hills*, 222 Kan. 231, 238–39, 564 P.2d 462, 467–69 (1977); *In Re Freeborn*, 94 Wash.2d 336, 617 P.2d 424, 29 UCC Rep. 1625, 1628 (1980). Security interests in "realty paper" representing a personal property right to receive payment have been held to be governed by and perfected under the Uniform Commercial Code. *In Re Freeborn, supra; Black v. Sullivan*, 48 Cal.App.3d 557, 122 Cal.Rptr. 119, 17 UCC Rep. 512 (1975); *H & Val J. Rothschild, Inc. v. N. W. National Bank of St. Paul*, 309 Minn. 35, 242 N.W.2d 844, 19 UCC Rep. 673 (1976); *United States v. PS Hotel Corp.*, 404 F.Supp. 1188, 18 UCC Rep. 770 (E.D.Mo.), affirmed, 527 F.2d 500, 18 UCC Rep. 775 (8th Cir. 1975). See also, B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 1.8[10][a] (1980); J. White & R. Summers, Uniform Commercial Code, § 22–6, at 890–91 (2nd Ed. 1980).

Assignments of rights to payment under contracts are governed by Article 9 unless the assignment is:

*a sale of accounts or chattel paper as part of a sale of the business out of which they arose, or an assignment of accounts or chattel paper which is for the purpose of collection only, or a transfer of a right to payment under a contract to an assignee who is also to do the performance under*

the contract or a transfer of a single account to an assignee in whole or partial satisfaction of a preexisting indebtedness; . . . .

K.S.A. § 84-9-104(f) (Supp.1981). This section *excludes . . . certain transfers of such intangibles which, by their nature, have nothing to do with commercial fi- anc-ing transactions.* Official Comment ʋ to K.S.A. § 84-9-104. The Bank does not argue the assignment is excluded under K.S.A. § 84-9-104(f) and it is clear the instant assignment does not fall within any of the exceptions. Moreover, by its very terms, the assignment of the right to receive payments from Kenneth Holmes was intended as security and intended to be governed by the UCC. See K.S.A. § 84-9-102.

■ Therefore, the Court holds the assignment of the right to receive payments under the instant contract for deed is governed by the UCC. Bank did not perfect its interest by filing a financing statement pursuant to K.S.A. § 84-9-401, and as the holder of an unperfected security interest, is defeated by the trustee's strongarm powers as a hypothetical lien creditor under 11 U.S.C. § 544(a)(1) and (2), and K.S.A. § 84-9-301(1)(b).

Bank also asserts it was assigned the Southworth's interest in the two parcels of land as vendees under their contract for deed with the Chenhalls and the Stuckeys. Though the Court has some serious reservations that the parties intended to assign all the Southworth's interest in the real estate, for purposes of this discussion the Court will accept that the assignment was so intended and made.

The Southworths were purchasing the land under a contract for deed, also called an installment or conditional sales contract, a common practice in Kansas. The Kansas Supreme Court has *likened the transaction to that of a mortgage . . . .* [T]*he relationship of the parties is substantially that of mortgagor and mortgagee. Fancher v. Carson-Campbell, Inc.,* 216 Kan. 141, 145, 530 P.2d 1225 (1975). Thus Bank was assigned the mortgagor's (Southworth's) interest in the two parcels of land. The assignment of the mortgagor-vendee's interest in a real estate transaction is outside the scope of the UCC:

*The contract vendee's interest focuses almost entirely on the real estate: the right to possession and the right to claim legal title once the installment payments are completed. Land installment contracts are simply devices to finance the sale of real estate, first cousin to a mortgage. Therefore, any assignment of the vendee's interest should be governed by applicable real estate law and excluded from Article 9 by § 9-104(j).*

B. Clark, The Law of Secured Transactions, *supra,* ¶ 1.08[10][a], at 1–72, n. 235.

■ In Kansas, a mortgage is a lien on real property to secure payment of a debt, K.S.A. § 58-2301 (1976), and written instruments affecting an interest in real estate are subject to recording in the register of deeds office where the real estate is located. K.S.A. § 58-2221 (1976).

[A]*ll lawful instruments entitled to recordation give notice of their contents to any person, particularly subsequent purchasers and mortgagees . . . [and] all unrecorded instruments conveying or affecting real estate shall not be valid, except as to the parties and those with actual notice of the instruments.*

Note, Recording Statutes: Their Operation and Effect, 17 Washburn L.J. 615, 617 (1976). A bona fide purchaser of land is entitled to priority over a prior unrecorded conveyance. See, e.g., *Farmers & Merchants State Bank v. Higgins,* 149 Kan. 783, 89 P.2d 916 (1939); *Hyndman v. Woman's Foreign Missionary Soc'y.,* 146 Kan. 34, 68 P.2d 645 (1937); Note, Recording Statutes, 17 Washburn L.J. supra.

■ The instant assignment was not filed by Bank pursuant to K.S.A. § 58-2222 to -2223, and the trustee, using his strong arm powers as *a bona fide purchaser of real property from the debtor,* 11 U.S.C. § 544(a)(3), has priority to the land and defeats the Bank. See Teofan & Creel, The Trustee's Avoiding Powers Under the Bankruptcy Act and the New Code: A com-

parative analysis, 11 St. Mary's L.J. 311, 317–19 (1979). Bank directs a substantial portion of its brief showing how a buyer from the debtor would have notice of the assignments. That the trustee could have notice if he was an actual purchaser is irrelevant. Congress has made the trustee a bona fide purchaser *without regard to any knowledge of the trustee* .... 11 U.S.C. § 544(a).

Bank asserts it is both buyer and seller. This is not completely true. There are two separate contracts for deed in issue. In the first, between the Southworths and the Chenhalls or the Stuckeys, the Southworths were only the buyers and Bank as assignee is only the buyer. In the second, between the Southworths and Holmes, the Southworths were only the sellers and Bank as assignee is only the seller. In order for Bank to be both buyer and seller, it would have to have acquired the interests of the Chenhalls and the Stuckeys in the first contract for deed and the interest of Holmes in the second. Thus, it is clear that in each contract for deed, Bank is not both the buyer and the seller.

Bank asserts the rights of the holder of an unrecorded mortgage are superior to the rights of a judgment lien creditor, citing *Ingram v. Ingram*, 214 Kan. 415, 521 P.2d 254 (1974). Once again, however, Bank fails to distinguish that there are two transactions through which it is claiming rights by assignment. In the transaction between the Southworths and the Chenhalls or the Stuckeys, the trustee has priority, not because the trustee has the power of a judgment lien creditor, *but rather because the trustee has the power of a bona fide purchaser under § 544(a)(3), without regard to any knowledge of the trustee* .... 11 U.S.C. § 544(a). A bona fide purchaser is a purchaser for value without notice of prior interests. See Note, Recording Statutes, 17 Washburn L.J. supra. Section 544(a)(3) establishes that the trustee *is* a hypothetical bona fide purchaser, regardless of his knowledge. *In Re Hotel Assoc., Inc.*, 10 B.R. 668, 7 BCD 612, 613 (Bkrtcy.E.D.Pa. 1981), and the law in Kansas is that such a bona fide purchase defeats prior unrecorded mortgages.

*[U]nrecorded real estate transfers, by way of grant of security, previously good against the trustee as a hypothetical judicial lien creditor will now be voidable by the trustee as a hypothetical bona fide purchaser.*

Teofan & Creel, 13 St.Mary's L.J. supra, at 319. See also Rendleman, Liquidation Bankruptcy Under the 1978 Code, 21 William & Mary L.Rev. 575, 610–12 (1980). Thus, so-called "secret" unrecorded liens are not favored in bankruptcy. Id.

Next, Bank and the debtor argue that if the trustee prevails, the result would be "disastrous upon the current usage of the sale and purchase of real property on escrow." The Court rejects this argument. State law provides the mean for protection —filing. Nothing the Court says today will have any affect whatsoever on creditors who follow the procedures to protect their interests set out by the state law.

■ The debtor asserts the assignment was made before the effective date of the Bankruptcy Code. Because the trustee did not have the avoiding powers of a bona fide purchaser until October, 1979, the debtor argues the trustee's use of the new avoiding power is an attempt to apply the new Bankruptcy Code retroactively and would not be constitutional.

This argument has no merit. The trustee is given a power under the Bankruptcy Code that every subsequent grantee and mortgagee has always had in Kansas—the power to defeat prior, unrecorded mortgages. There is no "taking" here as there was in *In Re Schulte*, 8 B.R. 12, 7 BCD 231 (Bkrtcy.D.Kan.1979), affirmed sub. nom. 642 F.2d 1193 (10th Cir. 1981). In *Schulte*, the Bankruptcy Code "extinguished" a perfected property right established under state law. The creditor in *Schulte* had done everything it could under state law to protect its interest. In the instant case, the Bankruptcy Code gives the trustee the same power to defeat prior unrecorded transactions as bona fide purchasers have always had under Kansas state law. This is not a

taking of a state law property right, but rather the incorporation in the Bankruptcy Code of the rules and priorities of that very state property right. Furthermore, the instant creditor is not able to argue it has done everything it could under state law to protect its interest. cf. *In Re Kerr*, 598 F.2d 1206 (10th Cir. 1979).

Finally, the Bank seems to argue that by having an assignment of the right to receive payments as a security device, and an assignment of the Southworth's interest in the land itself, it is relieved of any obligation to file anywhere. This premise cannot be accepted. Perfection of an interest in the right to receive payment requires a UCC filing. Perfection of an assignment of an equitable mortgage requires a real property filing. In the instant tripartite transaction when the assignee Bank was transferred a right to receive payments from Holmes' legal interest in the land, being purchased from the original owners, the Bank must perfect *both* under the UCC and state land perfection law. *In Re Freeborn*, 617 P.2d 424, 29 UCC Rep. supra at 1631. Bank did not perfect in either place and the trustee therefore is entitled to the debtor's ½ interest in the land being purchased from the original owners, and the debtor's ½ interest in the payments received from Holmes.

Therefore, Bank's request for relief in its complaint to modify stay is denied.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.