**In re Billy Ray SOUTHERN d/b/a Guinn Oil Company Rosemary (NMN) Southern, Debtor.**

**Edward J. NAZAR, Trustee, Plaintiff,**

v.

**Billy Ray SOUTHERN d/b/a Guinn Oil Company Rosemary (NMN) Southern, American State Bank, Oswego, Kansas, and Day & Nite Convenience Stores, Inc., Defendants.**

**Bankruptcy No. 82–10336.**
**Adv. No. 82–0517.**

United States Bankruptcy Court,
D. Kansas.

April 20, 1983.

Harry L. Depew, Depew Law Firm, Neodesha, Kan., for debtor.

Kurt A. Harper, Sherwood & Hensley, Wichita, Kan., for American State Bank.

Edward J. Nazar, Wichita, Kan., Trustee.

Christopher W. O'Brien, Redmond, Redmond, O'Brien & Nazar, Wichita, Kan., for trustee.

John D. Sherwood, Gray & Sherwood, Oswego, Kan., for American State Bank.

Phillip N. Cockrell, Hubbard, Patton, Peek, Haltom & Roberts, Texarkana, Tex., for Day & Nite Convenience Stores.

## MEMORANDUM OF DECISION

JAMES A. PUSATERI, Bankruptcy Judge.

In this chapter 7 proceeding, at issue is a determination of priorities between the trustee and American State Bank, a secured creditor. The Court has previously denied the trustee's request for summary judgment in a Memorandum of Decision and Order entered in this case on March 2, 1983.

The trustee, Edward J. Nazar, is represented by Christopher W. O'Brien of Redmond, Redmond, O'Brien & Nazar, Wichita, Kansas. American State Bank is represented by John D. Sherwood of Guy & Sherwood, Oswego, Kansas, and Kurt Harper of Sherwood and Hensley, Wichita, Kansas. The debtors are represented by Harry L. DePew, Neodesha, Kansas. Day & Nite Convenience Stores is represented by Phillip N. Cockrell of Hubbard, Patton, Peek, Hutton & Roberts, Texarkana, Texas.

The issues presented for determination are:

1. Is an assignment of a right to receive payment under an installment land sale contract governed by Article 9 of the Uniform Commercial Code, and if so, how can the creditor perfect its interest.

2. Is an assignment of a promissory note evidencing the right to receive payment under an installment land sale contract governed by Article 9, and if it is, how can the creditor perfect its interest.

3. Can the trustee use his strong arm powers under 11 U.S.C. § 544 to establish priority in the right to receive payments under a contract installment land sale contract, and/or the rights flowing from the promissory note.

4. Does a creditor who fails to file an interest in realty represented by an assignment of a mortgage granted to a seller under an installment land sale contract have an inferior interest to a trustee exercising his strong arm powers under 11 U.S.C. § 544(a)(3).

5. If the creditor has a filed mortgage on real estate, then releases the mortgage and takes an assignment of a mortgage on the same real estate that is never filed, is the creditor's priority under the original filed mortgage preserved so as to defeat a bona fide purchaser who purchases after the original mortgage is released.

A trial has been held, briefs have been submitted, and the Court is ready to rule.

## FINDINGS OF FACT

In November, 1976 the debtors owned the following non-exempt commercial realty:

Lots 1 and 2, Block 48, in a tract of land more particularly described as beginning at the Northwest Corner of said Lot 1, thence South along the West line of Lots 1 and 2 a distance of 100 feet, thence West 10 feet, thence North parallel with the West line of said Lots 1 and 2, a distance of 100 feet to a point due West of the beginning point, thence East 10 feet to the point of beginning, the same being the East 10 feet of the vacated alley adjoining said Lots 1 and 2, in the City of Oswego, Labette County, Kansas.

(hereinafter Lots 1 and 2).

On November 29, 1976 they borrowed $50,000 from the American State Bank (ASB) in Oswego, and signed a promissory note. As security for the loan, the debtors executed a real estate mortgage covering Lots 1 and 2, and also covering their homestead. This mortgage was properly executed and recorded in the Labette County Register of Deeds office.

On May 11, 1981 the debtors sold Lots 1 and 2 to Day & Nite Convenience Stores, Inc. (D & N). Under the same agreement, D & N gave the debtors a $30,000 promissory note at 11% interest per annum, with monthly payments of $513.68. D & N also gave the debtors a mortgage covering Lots 1 and 2.

ASB then released the portion of its mortgage with the debtors covering Lots 1 and 2.

In consideration of this partial release, the debtors assigned to ASB the promissory note and mortgage of D & N on Lots 1 and 2, "and the money due and to become due thereon...." (plaintiff's exh. 3). The assignment was executed in a document entitled "Assignment of Mortgage as Collateral Security." The assignment provided that D & N would continue to make its monthly payments directly to the debtors and the debtors would deposit the payments in an account at ASB. Under the assignment, ASB was authorized to apply the amount deposited in this account to reduce the indebtedness of the debtor to ASB on the

November, 1976 obligation. The assignment document also stated that if the debtors paid the unpaid balance of their note to ASB, the assignment would be "void and of no effect."

The assignment stated:

... this assignment [is] made for the purpose of further securing payment of the unpaid balance of said note [$50,000 note between the debtors and ASB executed in November, 1976] ... and for no other purpose whatever.

The assignment of the mortgage on Lots 1 and 2 was not recorded in the Register of Deeds office and a Uniform Commercial Code financing statement was never signed by the debtors nor filed by ASB.

The agreement apparently worked smoothly for a period of time with D & N making regular payments to the debtors and the debtors paying ASB according to the terms of the assignment.

On March 17, 1982 the debtors filed a chapter 7 petition in bankruptcy, but D & N continued to make regular payments to the debtor during March, April, May and June, 1982.

Upon discovering the continued payments, the trustee requested and the Court entered an ex parte order requiring that the payments be made to the trustee until it is determined which entity is entitled to the payments.

The trustee then filed the instant action under 11 U.S.C. § 544 claiming priority to the payments.

The trustee filed a motion for summary judgment which the Court denied on March 2, 1983 because it was not known if ASB had possession of the note.

At a trial held March 9, 1983 ASB could not prove it ever had possession of the assigned note, nor could ASB prove it had possession of the note when the debtors filed their bankruptcy petition or at present.

Copies of the note were introduced into evidence. Mrs. Southern testified she did not know the location of the original note, but that some of her records were destroyed in a fire in November, 1981. She did not know if the original note was consumed in the fire. Although Mrs. Southern felt their copy of the note came from ASB, the President of ASB, Richard Stevens, testified the bank did not have either a copy or an original of the note, and to his knowledge, the bank never possessed an original of the note. The president testified ASB received a copy of the note after the bankruptcy petition was filed from its attorney who received a copy from the debtors' counsel. There was no evidence of whether D & N had the original note. ASB filed its assignment after the petition was filed. Mr. Southern died after the chapter 7 was filed and before filing of this proceeding.

In an affidavit tendered by the trustee after the trial, the Office Manager of D & N, Art Whitehurst, stated that D & N had a copy of the note. It is not known when D & N acquired such a copy, and ASB did not argue D & N is its agent.

Thus, the Court finds ASB did not have actual possession of the note when the bankruptcy petition was filed, or at any time before the petition was filed.

## CONCLUSIONS OF LAW

■ In *Southwest Nat. Bank v. Southworth (In Re Southworth)*, 22 B.R. 376, 34 UCC Rep. 1372 (Bkrtcy.D.Kan.1982), this Court held in a similar factual setting, that the right to receive payments under an installment land sale contract is a personal property right, and the assignment of this right as security is governed by and perfected under Article 9 of the Uniform Commercial Code, notwithstanding that the right to receive payments is related to a real estate transaction:

If a borrower mortgages real property for a loan, K.S.A. § 84–9–104(j) excludes the transaction from the provisions of Article 9. If, however, the vendor/mortgagee holds a promissory note, a right to receive payment in conjunction with a real estate mortgage, and assigns the right to receive payment as security for a loan Article 9 governs.

Id. at 378. Further rationale, citations and authority for this holding that appear in *Southworth* are herein adopted and incorporated by reference. Id.

▇▇ The next question before the Court is: what was assigned? The trustee contends that the "right to receive payments" under the contract for deed was assigned. ASB contends the promissory note itself was assigned. The right to receive payments under a contract for deed is a "general intangible" under K.S.A. § 84–9–106 (Supp.1981). B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code, ¶ 1.8[10][g] at 1–72 (1980). A general intangible can be perfected only by a UCC–1 filing with the Kansas Secretary of State. K.S.A. § 84–9–302(1)(a); § 84–9–305 (Supp.1981); § 84–9–401(1)(c) (Supp.1981). The assignment of the promissory note itself is an assignment of an instrument as defined in K.S.A. § 84–9–105(i) (Supp.1981). B. Clark, supra, ¶ 1.8[10][a], at 1–70 to –71; ¶ 3.6 at 3–32. See *Greiner v. Wilke (In Re Staff Mortgage & Investment Corp.)*, 625 F.2d 281 (9th Cir. 1980); *Johnstone v. Mills (In Re Columbia Pacific Mortgage, Inc.)*, 22 B.R. 753, 34 UCC Rep. 1382 (Bkrtcy.W.D.Wash.1982). Instruments must be perfected by possession. K.S.A. § 84–9–304(1)(a); § 84–9–305 (Supp.1981); J. White & R. Summers, Uniform Commercial Code § 23–10, at 934–35 (2nd Ed.1980).

*1. Assignment of Note*

▇▇ ASB asserts the debtors assigned the promissory note itself to ASB. The Assignment of the note itself constituted an assignment of an instrument to secure payment of the debtors' obligation to ASB.

A security interest in an instrument such as a note must be perfected by possession, but ASB failed to prove it had possession of the note when the debtors filed their chapter 7 petition and further failed to prove it ever had possession of the note. Possession of the note by the debtor did not constitute constructive possession by ASB, or possession sufficient to perfect ASB's security interest under K.S.A. § 84–9–304. See,

e.g., *Huffman v. Wikle, (In Re Staff Mortgage and Investment Corp.)*, 550 F.2d 1228, 21 UCC Rep. 887 (9th Cir.1977); *In Re Bruce Farley Corp.*, 612 F.2d 1197, 28 UCC Rep. 240 (9th Cir.1980).

As stated in Official Comment 2 to K.S.A. § 84–9–305 (Supp.1981):

> Possession may be by the secured party himself or by an agent on his behalf; it is of course clear, however, that the debtor . . . cannot qualify as such an agent for the secured party.

See also B. Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 2.6[2] (1980); *In Re Staff Mortgage & Investment Corp.*, 625 F.2d 281 (9th Cir.1980).

Therefore, under the assignment of note theory, ASB was unperfected and the trustee as lien creditor has priority in the rights under the note pursuant to 11 U.S.C. § 544(a)(1), (2) and K.S.A. § 84–9–301(1)(b) (Supp.1982).

*2. Assignments of the Right to Receive Payment*

The trustee argues ASB has been assigned the right to receive payment under the note. Although ASB's argument has already failed, the Court will address the trustee's argument.

At the time their petition was filed, the debtors were indebted to ASB under the November 29, 1976 promissory note. As security for this indebtedness, ASB first has the right to receive payments under the note executed between the debtors and D & N. Second, ASB has an assignment of the mortgage on Lots 1 and 2 on the real estate given by D & N to the debtors. By its very terms the debtors' assignment to ASB was intended as security. See K.S.A. § 84–9–102 (Supp.1982).

Under this Court's holding in *Southworth,* the right to receive payment in the contract between the debtors and D & N which was assigned to ASB was an assignment governed by Article 9 of the UCC, and ASB had to file a financing statement to perfect its security interest. Because

ASB did not file a financing statement, the trustee has priority in the right to receive payments under 11 U.S.C. § 544(a)(1), (2) and K.S.A. § 84-9-301 (Supp.1982).

### 3. Assignment of the Mortgage

ASB also has an assignment of the mortgage on Lots 1 and 2.

In Kansas, a mortgage is a lien on real property to secure payment of a debt, K.S.A. § 58-2301 (1976), and all written instruments affecting an interest in real estate are subject to recording in the register of deeds office where the real estate is located. K.S.A. § 58-2221 (1976); *In Re Southworth,* supra, 22 B.R. at 379, Note, Recording Statutes: Their Operation and Effect, 17 Washburn L.J. 615, 617 (1976). Bona fide purchasers of land are entitled to priority over a prior, unrecorded conveyance. *In Re Southworth,* supra, 22 B.R. at 379, and cases cited therein. Just as in *Southworth,* the instant assignment of the mortgage,

> was not filed pursuant to K.S.A. § 58-2222 to -2223, and the trustee, using his strong arm powers as 'a bona fide purchaser of real property from the debtors,' 11 U.S.C. § 544(a)(3), has priority to the land and defeats the Bank. See Teofan & Creel, The Trustee's Avoiding Powers Under the Bankruptcy Act and the New Code: A Comparative Analysis, 11 St. Mary's L.J. 311, 317–19 (1979).

*In Re Southworth,* supra, 22 B.R. at 379–80.

The only factual distinction between *Southworth* and the instant case involves the original mortgage granted to and properly filed by ASB covering Lots 1 and 2.

Originally, ASB had a valid, filed, unperfected mortgage on Lots 1 and 2. If nothing else had happened and the debtors had filed bankruptcy, ASB would have had a right to be granted relief from the stay, or to receive an abandonment of Lots 1 and 2 from the trustee.

The debtors, however, sold Lots 1 and 2 to D & N, and took back a mortgage to secure the monthly installment payments from D & N. Apparently, in an effort to clean up the various transactions, ASB took an assignment of the D & N mortgage from the debtors and then released the original mortgage on Lots 1 and 2 it had with the debtors.

In substance, ASB started out with a filed mortgage on Lots 1 and 2 to secure payment from the debtors of $50,000. ASB ended up with an unfiled mortgage on Lots 1 and 2 to secure payment of the same debt, from the same debtors, plus ASB took the additional security of an assignment of the right to receive payments, and/or the note.

As a general rule,

> cancellation of a mortgage on the record is not conclusive as to its discharge, or as to the payment of the indebtedness secured thereby, and . . . where the holder of the senior mortgage discharges it of record, and contemporaneously . . . takes a new mortgage, he will not, *in the absence of paramount equities,* be held to have subordinated his security to an *intervening* lien.

(emphasis added) Annot. 98 A.L.R. 843 (1935), supplementing Annot., 33 A.L.R. 149 (1924). Accord, 59 C.J.S. Mortgages § 460 at 726–27 (1949). Kansas has embraced this rule in *Jackson & Scherer, Inc. v. Washburn,* 209 Kan. 321, 330, 496 P.2d 1358 (1972); *Potwin State Bank v. J.B. Houston & Son Lumber Co.,* 183 Kan. 475, 327 P.2d 1091 (1958); *Prairie State Bank v. Safford,* 140 Kan. 339, 36 P.2d 1015 (1934). This rule, however addresses itself to the following factual sequence. First, "A" has a valid, filed mortgage of record; second, "B" acquires a lien on the same property, with knowledge of the prior filed instrument; third, "A" releases its first mortgage and takes and files another mortgage. In the instant case, the following sequence occurred: first, ASB had a valid filed mortgage; second, ASB released its mortgage; third, the trustee acquired an interest in the realty as a bona fide purchaser under 11 U.S.C. § 544(a)(3). In the instant case there is no *intervening* lien, but rather a subsequent lien or purchaser. The subsequent purchaser could not have knowledge of the priority or existence of the original

mortgage because it had been released. Thus, absent an *intervening* lienholder and because a bona fide purchaser in the instant case would not know of the priority of the original mortgage which was released, paramount equities prevent the general rule from applying.

Therefore, the Court holds that the trustee's interest in Lots 1 and 2 as a bona fide purchaser under 11 U.S.C. § 544(a)(3) is paramount to ASB's released mortgage and subsequent unrecorded mortgage.

In summary, the trustee has priority over ASB under all theories, and accordingly, the trustee is entitled to be paid all future payments by D & N.

The foregoing constitutes Findings of Fact and Conclusions of Law under Bankruptcy Rule 752 and Rule 52(a) of the Federal Rules of Civil Procedure.