**In re James O. BLACKWELL and Louise M. Blackwell, Debtors.**

**Walter P. CROWNOVER, Trustee, Plaintiff,**

v.

**Ruth Aileen TURNER, et al., Defendants.**

**Bankruptcy No. BK83–1074. Adv. No. AP84–0646.**

United States Bankruptcy Court, N.D. Alabama, W.D.

Oct. 19, 1984.

---

1. Because the instant transaction took place before February 1, 1982, the amended version of Article 9 which became effective on that date

Walter P. Crownover, Tuscaloosa, Ala., trustee.

W. Cameron Parsons, Tuscaloosa, Ala., for debtors.

Charles R. Johanson, Tuscaloosa, Ala., for Jefferson Federal Savings & Loan Association.

**OPINION AND ORDER**

GEORGE S. WRIGHT, Bankruptcy Judge.

This matter came before the Court on the motion of Jefferson Federal Savings and Loan, Inc. requesting this Court to reconsider its Order of June 1, 1984 classifying Jefferson Federal's claim as unsecured. The issue presented on rehearing is whether an assignment for security of a purchaser's rights under a bond for title is included within the scope of Article 9 of the U.C.C. by Alabama Code Section 7–9–102 (1975)[1] or is excluded from Article 9 by Alabama Code Section 7–9–104(j) (1975). After giving due consideration to the arguments of the parties, the evidence, and the applicable law, the Court makes the following findings and conclusions.

I. Assignment of Vendee's Rights Under Bond for Title Excluded From Article 9 of the Uniform Commercial Code.

Alabama Code Section 7–9–102 (1975) outlines the scope and policy of Article 9. Subsection (1)(a) provides:

(1) Except as otherwise provided in section 7–9–103 on multiple state transactions and in section 7–9–104 on excluded transactions, this article applies so far as concerns any personal property and fixtures within the jurisdiction of this state:

(a) To any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangi-

does not apply. *See Ala. Code* Section 7–11–101 (Supp.1983).

bles, chattel paper, accounts or contract rights;

*Ala. Code* Section 7–9–102(1)(a) (1975). Section 7–9–104 of the Code of Alabama (1975) is also a scope provision since it specifically excludes certain transactions from Article 9. That section provides in pertinent part:

**Section 7–9–104. Transactions excluded from article.**

This article does not apply:

. . . .

(j) Except to the extent that provision is made for fixtures in section 7–9–313, to the creation or transfer of an interest in or lien on real estate, including a lease or rents thereunder; or

*Ala. Code* Section 7–9–104(j) (1975). From these two sections, it is clear that security interests in personal property are subject to the filing requirements of Alabama Code section 7–9–302 and 7–9–401 (1975) while security interests in real estate must be perfected in the real estate records.

Because Jefferson Federal filed its assignment of the purchaser's rights under the bond for title in the office of the Probate Judge of Tuscaloosa County, Alabama, whether the claim should be classified as secured pursuant to 11 U.S.C. Section 506 depends upon whether the creditor properly filed in the real estate records pursuant to Alabama Code Section 7–9–104(j) or whether the creditor should have filed a financing statement, *Ala. Code* Section 7–9–302 (1975), in the office of the Secretary of State of Alabama, *Ala. Code* Section 7–9–401(c) (1975).

The Court has found no Alabama cases discussing the interrelationship between sections 9–102 and 9–104(j). Although the Supreme Court of Alabama stated in *Majors v. State,* 336 So.2d 1098 (Ala.1976) that a bond for title has the legal effect of a contract to convey land, the Alabama court did not address the interrelationship of these two sections. The *Majors* court was defining the rights of a bond for title purchaser; where an assignee for security of the rights of the bond for title vendee should file to perfect his interest was not addressed by the *Majors* court.

The resolution of this issue would be simple if the Court could say that since this transaction relates to real estate it is excluded from Article 9 by Section 9–104(j) and by Section 9–102(1)(b) since only security interests in personal property are governed by the provisions of Article 9. Alabama Code Section 7–9–102(3) (1975) precludes the Court from using this approach. That section provides:

(3) The application of this article to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this article does not apply. (Acts 1965, No. 549, p. 811.)

*Ala. Code* Section 7–9–102(3) (1975). Thus, even though the subject matter underlying the transaction is real estate, the transaction itself may be governed by Article 9.

Official Comment number 4 to Alabama Code Section 7–9–102 provides the following illustration of the operation of subsection (3):

The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. Nor is it applicable to a sale of the note by the mortgagee, even though the mortgage continues to secure the note. However, when the mortgagee pledges the note to secure his own obligation to X, this Article applies to the security interest thus created, which is a security interest in an instrument even though the instrument is secured by a real estate mortgage. This Article leaves to other law the question of the effect on rights under the mortgage of delivery or non-delivery of the mortgage or of recording or non-recording of an assignment of the mortgagee's interest. See Section 7–9–104(j). But under Section 7–3–304(5) recording of the assignment does not of itself prevent X from holding the note in due course.

*Id.* Official Comment 4. While this comment illustrates the operation of Alabama

Code Section 7–9–102(3) (1975), it does not resolve the issue now before the Court since we are concerned here with an assignment for security by a vend*ee* under a bond for title of his interest and not with a mortgag*ee*'s pledging his rights under a note secured by a mortgage.

The cases and authorities that have addressed the interrelationship of sections 9–102 and 9–104(j) in the land sales contract context have distinguished between the granting of a security interest in the rights of a vend*or* and in those of a vend*ee*. One eminent writer has stated:

> There are numerous other examples of collateral which involves real estate but is still covered by Article 9. A classic situation is the assignment of contract rights by a builder to a bank or other lender; the collateral is rights to payment under an executory contract right and thus requires an Article 9 financing statement for perfection. The same is true of a security interest in contracts for the sale of land, which probably constitute "general intangibles" under Rev. Section 9–106. If the bank takes an assignment of the vendor's interest in the land contract, it should file a financing statement under Article 9 in addition to assuring that the vendor's interest is adequately protected under local real estate law. Failure to file a financing statement will make the assignment vulnerable if the vendor goes bankrupt.

Clark, *The Law of Secured Transactions Under the Uniform Commercial Code* 1.8 [10] [a] (1980). In a footnote to this passage, the writer notes that the granting of a security interest in the vendee's rights under the land sales contract falls outside the scope of Article 9. The following is the text of that illuminating footnote:

> It could of course be argued that a contract *vendor's* interest is real estate, excluded from Article 9 by Section 9–104(j). This argument has some appeal, particularly given the fact that the vendor will retain "legal title" to the realty until the vendee has made all installment payments. Indeed, if the vendor were to execute a formal real estate mortgage instead of an assignment of the right to payments under the land contract, the transaction might well be excluded from Article 9. The better part of wisdom in any case is to make a two fold perfection: (1) File a financing statement covering the interest as a general intangible, and (2) record the assignment in the real estate records. In some states, however, the price for recording the assignment as an interest in real estate may be payment of a hefty mortgage registration fee.
>
> What if the real estate *vendee* assigns its interest as security for a debt? Is a real estate vendee's right to specific performance an Article 9 "general intangible"? Although there are no cases on point, and the matter would come upon with less frequency than an assignment of the vendor's interest, a court should conclude that the transaction is outside the scope of Article 9. The contract vendee's interest focuses almost entirely on the real estate; the right to possession and the right to claim legal title once the installment payments are completed. Land installment contracts are simply devices to finance the sale of real estate, first cousin to a mortgage. Therefore, any assignment of the vendee's interest should be governed by applicable real estate law and excluded from Article 9 by Section 9–104(j). By contrast, the vendor's right is more in the nature of an account receivable and probably falls within the ambit of the UCC, as the Equitable Development Corporation [20 U.C.C. 1349 (Bkrtcy.S.D.Fla.1976)] case holds. (Underlining for emphasis.)

*Id.* at 1.8 [10] [a] n. 235. *Compare In re Southern*, 32 B.R. 761, 37 U.C.C. 1704 (Bkrtcy.D.Kan.1983) (security interest in vend*or*'s right to payment within Article 9) *with Garnett State Savings Bank v. Tush*, 35 U.C.C. 608 (Kan.1983) (assignment for security of vend*ee*'s interest excluded from Article 9 by 9–104(j)).

Based upon the aforementioned authorities, the Court concludes that the assignment for security by the Blackwells to Jef-

ferson Federal Savings and Loan, Inc. of their interest in the bond for title was a transaction which was excluded from Article 9 by Alabama Code Section 7–9–104(j) (1975). The perfection of Jefferson Federal's security interest should, therefore, be governed by applicable real estate law. *See* Clark, *supra* at 1.8 [10] [a] n. 235. Because Jefferson Federal properly filed in the office of the Probate Judge of Tuscaloosa County, Alabama, its claim must be classified as secured pursuant to 11 U.S.C. Section 506.

II. *Recordation of Bonds for Title*

The Court's conclusion that an assignment for security of the vendee's interest in a bond for title must be recorded in the real estate records is supported by the fact that the Alabama recordation statutes specifically provide for the recordation of bonds for title. *Ala. Code* Section 35–4–53 (1975).[2] Just as an assignment of a mortgage must be recorded in the real estate records, *Pratt City Savings Bank v. Merchant's Bank and Trust Co.*, 228 Ala. 251, 153 So. 185 (1934), so also must this assignment of the Blackwells' rights under this bond for title. It is, therefore, by the Court

**ORDERED, ADJUDGED AND DE-CREED:**

(1) That the portion of this Court's Order of June 1, 1984 classifying the claim of Jefferson Federal Savings and Loan, Inc. as unsecured is hereby **SET ASIDE AND VACATED.**

(2) That the perfection of an assignment for security of the interest in real estate of a bond for title vendee is excluded from Article 9 by Alabama Code Section 7–9–104(j) (1975) and is governed by applicable real estate law.

(3) That because Jefferson Federal Savings and Loan, Inc. properly perfected its rights in the bond for title by filing its assignment for security in the office of the Probate Judge of Tuscaloosa County, Alabama, its claim must be classified as **SECURED** pursuant to 11 U.S.C. Section 506.

---

2. That section provides as follows:

**Section 35–4–53. Bonds for title, etc.**

Every bond for title or other written contract for the sale of land, acknowledged or witnessed as required by law, as well as any purchase money note, may be recorded in a similar manner as provided for the conveyances of lands and shall be notice to all subsequent purchasers, lienors and creditors of the existence of such bond, contract or note and of the rights of the parties thereto.

*Ala. Code Section 35–4–53 (1975.)*