**DOMINION BANK, N.A.,**
**Plaintiff–Appellee,**

v.

**David S. WILSON,**
**Defendant–Appellant.**

No. 88–3577.

United States Court of Appeals,
Fourth Circuit.

Argued Dec. 6, 1988.
Decided Feb. 8, 1989.

John Granville Douglass (Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., on brief), for defendant-appellant.

Phillip Dandridge Payne, IV (James F. Douthat, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief), for appellee.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HARRISON L. WINTER, Chief Judge:

The question for decision is whether Dominion Bank, N.A. (Bank) obtained a security interest under a Uniform Commercial Code (UCC) security agreement in the debtor's option to purchase real estate that the debtor had exercised before entering into the security agreement. The bankruptcy court held that the Bank did not, but its ruling was reversed by the district court,

86 B.R. 871. The debtor appeals and we reverse.

## I.

On August 30, 1978, the debtor, David S. Wilson, entered into an option agreement with L.B. Holyfield granting Wilson the right to purchase several acres of land, known as the Holyfield property, located at Smith Mountain Lake, Virginia. Wilson exercised the option on September 19, 1979, and requested closing by October 1, 1979. Because of some ambiguities in the option agreement, the closing was postponed and litigation ensued resulting in the reversal by the Supreme Court of Virginia of a trial court ruling that the option was unenforceable and a remand of the case for further proceedings. *See Wilson v. Holyfield*, 227 Va. 184, 313 S.E.2d 396 (1984). The further proceedings have not yet been conducted because of Wilson's later bankruptcy.

After exercising the option to purchase the Holyfield property, Wilson obtained loans from the Bank to finance various other development projects. To secure these loans, the Bank acquired deeds of trust on the real estate under development, and an agreement giving the Bank a security interest in various items of Wilson's personal property, including "accounts receivable, inventory and contract rights used or held by Wilson in his trade or business." This security agreement between the Bank and Wilson made no mention of Wilson's interest in the Holyfield property, or in any other real estate. Indeed, the agreement explicitly stated that:

No part of the collateral is or will be fixtures, shall be affixed to real estate or otherwise is or will become so related to particular real estate that an interest in it arises under real estate law.

Likewise, the UCC financing statement filed by the Bank recited that it covered "accounts receivable, inventory, and contract rights." It made no mention of any interest in any real property, including the Holyfield property.

In November, 1985, Wilson filed a petition for relief under Chapter 11 of the

Bankruptcy Code. The Bank filed an adversary proceeding seeking to lift the automatic stay to permit it to foreclose on its security. Although the parties reached what purported to be a settlement, they continued to litigate the question of whether the Bank had a security interest in Wilson's rights under the contract for the purchase of the Holyfield property. The bankruptcy court, invoking the doctrine of equitable conversion, ruled that Wilson's interest in the Holyfield contract at the time he entered into the security agreement was an interest in real estate and not covered by the security agreement. It also ruled that the phrase "contract rights" in the security agreement was not a reference to Wilson's interest in the Holyfield contract. The district court, however, ruled differently. It held that Wilson could not invoke the doctrine of equitable conversion against the Bank, "a third party not involved in the real estate transfer." It reasoned that Wilson's interest in the Holyfield contract was thus personal property included within the security agreement's enumeration of "contract rights."

## II.

Under Virginia law, it is well-established that a contract for the purchase of land, or the exercise of an option to purchase land, vests in the purchaser an equitable interest in real estate. *See Ryland Group, Inc. v. Wills*, 229 Va. 459, 463–65, 331 S.E.2d 399, 402–03 (1985); *Carmichael v. Snyder*, 209 Va. 451, 454, 164 S.E.2d 703, 706 (1968); *Sale v. Swann*, 138 Va. 198, 207, 120 S.E. 870, 873 (1924). Were we to apply this rule of equitable conversion here, it would follow that when Wilson exercised his option to purchase the Holyfield property, he acquired equitable title to the land itself. Because Wilson's interest would therefore have been in real and not personal property, the Bank's security interest could not have extended to it. This is so both because the security agreement expressly stated that it did not extend to interests in real estate, and because Virginia's enactment of the UCC by its terms "does not apply ... to the creation or transfer of an interest in or lien on real estate...." Va. Code Ann. § 8.9–104(j) (1965 and 1988 Supp.).

The Bank contends, and the district court agreed, that the doctrine of equitable conversion is inapplicable here. They rely principally on *Miller v. Kemp*, 157 Va. 178, 160 S.E. 203 (1931). Their argument is that the doctrine of equitable conversion is applicable principally to the relationship between the vendor and vendee and does not affect, except in limited circumstances not present here, the rights of third persons.

We do not think that *Miller* is controlling. The actual holding in *Miller* was that a judgment lien against a holder of an equitable interest in land did not cloud the legal title of a subsequent good faith purchaser of the land. In a singularly obscure opinion, the court tried to draw a "clear" distinction between "a complete equitable title in land" and a "mere equitable right or interest ... in an executory contract" for the sale of the land. 160 S.E. at 205. The court did say that "[i]n equity the vendee" under such a contract "owns the land," but cautioned that this was an "equitable doctrine" that could not "be invoked as conclusively determining all legal rights and liens of others," *id.* at 206, especially where to do so would "sanction injustice or ... nullify ... clear legal title." *Id.* at 207.

We find it impossible to fathom the intended scope of *Miller*, but we think it is distinguishable from the instant case. Briefly stated, *Miller* arose on the following facts. Two men, Gresham and Paschall, contracted with another to buy property jointly. They paid for it jointly, but the property was divided into lots and conveyed to them individually, with Gresham becoming the grantee of three lots and Paschall the grantee of a fourth. Paschall apparently consented to the conveyance of the three lots to Gresham, but he (and his wife) failed legally to release their interest therein.

Subsequently, Gresham conveyed the three lots to Miller, who had no notice of Paschall's interest. Miller, in turn, contracted to sell the lots to Kemp. In the meantime, however, judgment liens had en-

sued against Paschall, and Kemp sought to avoid his contract on the ground that the judgment liens attached to Paschall's equitable interest in the property. The Virginia trial court agreed. The Supreme Court of Virginia, by a split vote, reversed. It held that the doctrine of equitable conversion could not be applied so as to give Paschall an equitable interest in the land that would cloud the unsuspecting Miller's title.

Manifestly *Miller* involved largely a balancing of the equities of the parties. In this regard, the instant case is quite different. To apply the doctrine of equitable conversion here would not divest an unsuspecting purchaser of the clear legal title he thought that he had obtained in an earlier transaction, for the nature of Wilson's interest in the Holyfield property was well-known to the Bank when it took the security agreement. We have no occasion to balance the equities. All we must decide is whether Wilson's interest is best characterized as real or personal property for the purposes of the security agreement and the UCC.

We conclude that the doctrine of equitable conversion should apply and that Wilson's interest in the Holyfield contract should be treated as real property, rather than personal property. The result that we reach is in accord with *In re Blackwell*, 43 B.R. 398 (Bankr.N.D.Ala.1984); *Garnett State Sav. Bank v. Tush*, 232 Kan. 447, 453–54, 657 P.2d 508, 513 (1983); and Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 1.8[10][a] at 1–72 n. 235 (1980). Certainly the Bank cites no controlling authority to the contrary. When the doctrine of equitable conversion is applied the conclusion is inescapable that Wilson's interest in the Holyfield contract was not pledged under the security agreement and indeed could not have been pledged under the UCC.

### III.

Because of our conclusion that Wilson had acquired equitable title to the Holyfield property before he entered into the security agreement, it is unnecessary for us to decide Wilson's other contention that the security agreement's reference to "contract rights" was insufficient to identify Wilson's interest in this case.

REVERSED.